

**FILED**

JAN - 8 2004


CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CALIFORNIA DEPARTMENT OF TOXIC
SUBSTANCES CONTROL,

                        NO. CIV. S-02-442 LKK/DAD

        Plaintiff,

   v.                    **AMENDED ORDER[1]**

CITY OF CHICO, CALIFORNIA, et al.,    **TO BE PUBLISHED**

        Defendants.
_____/

    Plaintiff, Century Indemnity Company (Century), filed this action after expending funds in connection with the remediation of a hazardous waste site.  Century brings claims alleging rights under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601 et seq.  Century also alleges various state law based claims.  This matter comes before the court on defendants' motions to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and for judgment on the pleadings, pursuant to

_____

    [1] The court's December 12, 2003 opinion is amended solely to correct clerical errors prior to publication.

Fed. R. Civ. P. 12(c).  I decide the motions based on the papers and pleadings filed herein and after oral argument.

## I.

### BACKGROUND

This action arises out of a perchloroethylene ("PCE") plume located in the central business district of Chico, California.  On February 28, 2002, the California Department of Toxic Substances Control ("DTSC") filed suit against ten individuals and companies seeking to recover its costs in investigating and remediating the PCE-contaminated groundwater in the Central Plume.  The defendants, include, inter alia, Noret, Inc. ("Noret") and its two principals, Norville and Janet Weiss ("Weisses").  As is standard practice in multi-party CERCLA cost recovery cases, Noret and the Weisses brought cross-claims against the other parties sued by DTSC, alleging, among other things, contribution under CERCLA section 113(f)[2] and declaratory relief under section 113(g)(2)[3].  With a few exceptions, each of the other defendants filed similar cross-claims against all of the other defendants.

Century, Noret's insurer, filed a separate suit on April 7, 2003, against all of the defendants in the DTSC case, except for

---

[2]   "Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title."  42 U.S.C. § 9613(f).

[3]   In removal or remedial actions, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent . . . actions to recover further response costs or damages."  42 U.S.C. § 9613(g)(2).

Noret and the Weisses, alleging twelve causes of action under CERCLA and California law.  Century seeks to impose joint and several liability as an innocent party under CERCLA, subrogation as the insurer of Noret and the Weisses, and contribution.  The Court consolidated the DTSC case and the Century case on July 25, 2003.

The motions for judgement on the pleadings are brought by the City of Chico[4] and the California Department of Toxic Substances Control (DTSC).[5]  Noret brings the motion to dismiss.[6]

## II.

### JOINT & SEVERAL LIABILITY

Century seeks to impose joint and several liability against the defendant PRPs under 42 U.S.C. § 9607.  That section provides that owners, operators, arrangers, and transporters are liable for response and remedial costs incurred by the government and "any other person" in remediating a hazardous condition.[7]

---

[4]    The City of Chico's motion is joined by California Water Service Co., Sunset View Cemetery, and the Peden parties.

[5]    Century argues that DTSC does not have standing to bring the motion since it was not a party in Century's original suit. The court need not address this contention since the California Water Service Co., Sunset View Cemetery, and the Peden parties have joined in the motion.

[6]    Noret's motion is joined by the California Water Service Co. and the City of Chico.

[7]    42 U.S.C. 9607 (a) provides:

(1) the owner and operator of a vessel or a facility,
(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
(3) any person who by contract, agreement, or otherwise

3

Century alleges that it has so far spent $2.8 million in hazardous waste response costs for which it bears no responsibility.  It urges that the plain meaning of § 9607's provision, "any other person," means any person who has incurred response or remedial costs, including a liability insurer, and thus it is entitled to bring this suit.

The contention is novel.  Neither the court, nor any party, has discovered any case in which an insurer of a potentially responsible party (PRP) brought a direct action under CERCLA.  Of course, novelty is not an inherent characteristic of error.  As it turns out, however, the paucity of litigation is quite explicable, since plaintiff's claim rests on a faulty premise, and the statutory scheme bars such an action.

I begin with the false premise.  Put directly, Century has not incurred any response costs; rather, it has indemnified Noret for Noret's response costs.  Its involvement with the Central Plume Site is exclusively in its capacity as Noret's insurer.  Century

> arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
> **(4)** any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for--
> **(A)** all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
> **(B)** any other necessary costs of response incurred by any other person consistent with the national contingency plan.

was obligated by the law governing insurance contracts to incur the costs related to the site investigation.  Neither CERCLA, nor any other law concerning environmental remediation, determined its obligation to Noret.

Century insists that "[r]egardless of the source of [its] obligation to incur costs relating to the site remediation . . . the fact remains that Century, and not Noret, has incurred such costs, and [it therefore] has the superior right under CERCLA . . . to seek recovery of those costs."  This so-called plain meaning analysis, however, simply ignores the context of the phrase it relies on, as well as the overall statutory scheme.  Canons of construction do not permit such a reading.

"It is a fundamental canon of statutory construction, that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  Turtle Island Restoration Network v. National Marine Fisheries Service, 340 F.3d 969 (9th Cir. 2003) (citing Davis v. Michigan Dep't. of Treasury, 489 U.S. 803, 809 (1989)); see also Conroy v. Aniskoff, 507 U.S. 511, 514 (1993) ("[T]he cardinal rule" is "that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context.").  Read within the statutory context, the phrase "any other person" does not include insurers who have no responsibility to engage in remediation by virtue of the statute.  The reason for this is straightforward; the statute provides for three different forms of recovery, and Century's rights are provided for under a section other than § 9607.

1    CERCLA allocates the rights and responsibilities of those

2    involved in hazardous waste remediation.  Congress created section

3    9607(a) so that "innocent parties – not parties who were themselves

4    liable – [would] be permitted to recoup the whole of their

5    expenditures."   United Technologies Corp. v. Browning-Ferris

6    Indus., Inc., 33 F.3d 96, 100 (1st Cir. 1994), cert. denied, 513

7    U.S. 1183 (1995).  In § 113(f) (42 U.S.C. § 9613(f)), Congress also

8    provided a right of recovery for parties who are themselves liable

9    for the hazardous waste by expressly allowing a contribution action

10   against other PRPs.  Finally, as discussed in detail below,

11   Congress provided for rights of subrogation.  This statutory scheme

12   belies Century's contention.

13   Century essentially argues that because it is not responsible

14   for the Plume, but has incurred response costs, it falls within the

15   "innocent party" category and can recover all of its expenses by

16   bringing a § 9607 action.  The essential flaw in Century's position

17   is its unwillingness to come to grips with its status, which is not

18   a party (innocent or otherwise) in the CERCLA sense, but an

19   insurer.  This distinction and the statute's provision for

20   subrogation rights for insurers demonstrates the flaw in Century's

21   contention.

22   CERCLA allows those who "pay compensation" to another for

23   damages or costs resulting from a release of a hazardous substance

24   to recover those expenses by bringing a subrogation action.

25   ////

26   ////

1  <u>See</u> 42 U.S.C. § 9612(c)(2).[8]   Such actions, of course, are the
2  traditional means by which insurance companies may recoup.  Century
3  indemnified its claimant, Noret, for the costs incurred in cleaning
4  up  the  Plume  as  a  potentially  responsible  party.    Century
5  acknowledges that it can bring a subrogation action as provided in
6  CERCLA, but argues that it may also bring a § 9607 action as a
7  separate and distinct basis for recovery.  I cannot agree.

8       While some states, including California, provide that remedies
9  are cumulative, as a general matter federal law does not.   When
10  Congress provides  for  an  express  remedy,  the  courts  ordinarily
11  cannot  impose  other  remedies  nor  interpret  one  provision  of  a
12  statute providing for recovery so that another provision has no
13  application.  <u>See</u> <u>United States v. Northrop Corp.</u>, 59 F.3d 953 (9th
14  Cir. 1995); <u>Wilshire Westwood Assoc. v. Atlantic Richfield</u>, 881
15  F.2d 801 (9th Cir. 1989) (rejecting plaintiff's plain language
16  interpretation that certain substances were not considered
17  hazardous because such an interpretation would run contrary to
18  another CERCLA provision).  Century's construction violates both
19  principles.  As I explain below, if insurers could sue pursuant to
20  § 9607, CERCLA's subrogation provision would be rendered nugatory.
21  A brief review of basic subrogation law explains why.

22  _____

23       [8]    "Any person, including the Fund, who pays compensation
     pursuant to this chapter to any claimant for damages or costs
     resulting  from  a  release  of  a  hazardous  substance  shall  be
24  subrogated to all rights, claims, and causes of action for such
     damages and costs of removal that the claimant has under this
25  chapter or any other law."

26  42 U.S.C. § 9612(c)(2).

1    Subrogation is "among the oldest of [equitable] doctrines."
2  American Surety Co. of New York v. Bethlehem Nat. Bank of
3  Bethlehem, 62 S.Ct. 226 (1941).   It is "the substitution of one
4  party in place of another with reference to a lawful claim . . .
5  [and] is [therefore] a derivative right."   In re Hamada, 291 F.3d
6  645 (9th Cir. 2002).   Thus, Century, as an insurer, will be able
7  to bring a subrogation action against third-party PRPs who are
8  legally responsible to its insured in order to recover the loss it
9  paid.   Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health and
10 Welfare Plan, 64 F.3d 1389 (9th Cir. 1995).   The extent of the
11 remedy available, however, is limited to that available to the
12 insured.   A "subrogee's right of action is *not* independent and
13 separate, but is equal to and limited by the right of action
14 possessed by its insured; the subrogee simply stands in the stead
15 of the original claimant and is subject to all [claims and]
16 defenses which could have been asserted against that party."   Smith
17 v. Parks Manor, 197 Cal.App.3d 872, 881 (1987); see also Taisho
18 Marine & Fire Insurance Co., Ltd. v. M/V Sea-Land Endurance, 815
19 F.2d 1270, 1274 (9th Cir. 1987); Patent Scaffolding Co. v. William
20 Simpson Constr. Co., 256 Cal.App.2d 506 (1967).   Thus, under a
21 subrogation action, Century steps into the shoes of its insured,
22 Noret, a PRP.

23    In this Circuit, a PRP cannot bring a § 9607(a) action to hold
24 other PRPs jointly and severally liable.   Pinal Creek Group v.
25 Newmont Mining Corp., 118 F.3d 1298 (9th Cir. 1997), cert. denied,
26 524 U.S. 937 (1998).   It thus follows, that in a subrogation

1   action, Century cannot divorce itself from its insured's status as
2   a PRP, and being limited to Noret's rights and claims, cannot
3   impose joint and several liability on the other PRP's.  If Century
4   were allowed to bring a § 9607(a) action, however, it would not be
5   limited to whatever rights Noret has, but would be able to hold
6   other PRPs jointly and severally strictly liable for its
7   indemnification costs.  It follows that if the subrogation and
8   section 9607(a) actions were interpreted as cumulative remedies,
9   liability insurers would always seek recovery pursuant to
10  § 9607(a), thereby nullifying CERCLA's subrogation provision.

11      Nor is this the only provision of CERCLA that is incompatible
12  with Century's argument.  Century's § 9607(a) action would also
13  frustrate CERLCA's provisions concerning contribution among PRPs.
14  Section 9613(f) permits a PRP to seek contribution from others who
15  are potentially liable under § 9607(a), and requires equitable
16  apportionment of the total hazardous waste response costs among the
17  PRPs.  Thus, a PRP who pays response costs can sue to recover those
18  expenses paid in excess of its own liability by spreading the costs
19  to other PRPs. Since such a suit is a claim for contribution, a PRP
20  can never recover all of its expenses.  If the PRP's liability
21  insurer were allowed to bring a § 9607 action against other PRPs,
22  and hold them jointly and severally liable for its response costs,
23  a PRP could recoup all of it expenditures regardless of fault.  See
24  New Castle County v. Halliburton NUS Corp., 111 F.3d 1116 (3d Cir.
25  1997).  As noted, such a result is inconsistent with the statutory
26  scheme.  Pinal Creek, 118 F.3d at 1306 ("[U]nder CERCLA, a PRP does

not have a claim for the recovery of the totality of its cleanup costs against other PRPs, and a PRP cannot assert a claim against other PRPs for joint and several liability."); Fireman's Fund Ins. Co. v. City of Lodi, Cal., 302 F.3d 928, 945 (9th Cir. 2002) ("CERCLA §107 and CERCLA §113 provide different remedies: a defendant in a §107 cost-recovery action may be *jointly and severally liable* for the total response cost incurred to cleanup a site, whereas a defendant in a §113(f) contribution action is *liable only for his or her pro rata share* of the total response costs incurred to cleanup a site.") (emphasis in original), cert. denied, 123 S. Ct. 1754 (2003).

Yet another reason, inherent in the statutory scheme, bars Century's claim.  In Pinal Creek, the Ninth Circuit explained that if defendant PRPs were held jointly and severally liable "by a claimant PRP, reduced by the amount of claimant PRP's own share, those defendant PRPs would end up absorbing all of the cost attributable to 'orphan shares.'" 118 F.3d 1298, 1303 (9th Cir. 1997).  CERLCA does not support a rule "which would immunize the claimant PRP from the risk of orphan-share liability and would restrict substantially the ability of courts to apportion costs equitably pursuant to section 113(f)." Id.

Having demonstrated that, when read in context, Century's suit must fail, I briefly pause to note that its suit would also frustrate one of Congress' purposes in enacting the statute.

////

////

1    One of the core purposes of CERCLA is to foster settlement
2  through its system of incentives and without unnecessarily further
3  complicating already complicated litigation.   See Commonwealth
4  Edison Co. v. United States, 271 F.3d 1327, 1350-51 (Fed. Cir.
5  2001), cert. denied, 535 U.S. 1096 (2002) ("CERCLA is a strict
6  liability statute, one of the purposes of which is to shift the
7  cost of cleaning up environmental harm from the taxpayers to the
8  parties who benefitted from the disposal of the wastes that caused
9  the harm."); In re Cuyahoga Equipment Corp., 980 F.2d 110, 119 (2d
10  Cir. 1992) ("Congress sought through CERCLA to . . . encourage
11  settlements that would reduce the inefficient expenditure of public
12  funds on lengthy litigation."); see also United States v. Dravo
13  Corp., No. 8:01-CV-500, 2002 WL 1832274, *3 (D. Neb. 2002) ("Thus,
14  the court's goal in a CERCLA action is twofold: to promote
15  efficiency in cleanup of sites where hazardous waste is detected,
16  and to promote efficiency in the settlement of the civil action
17  relating to the costs of the cleanup.").

18    Of course, nothing in CERCLA prevents PRPs from insuring
19  against claims under the statute.  Allowing such insurers a § 9607
20  claim, however, adds yet another layer of parties and issues to the
21  litigation, thus complicating the litigation.  Moreover, to
22  encourage settlement, "Congress employed incentives for potentially
23  responsible parties to settle and strong disincentives for non-
24  settling potentially responsible parties." Bedford Affiliates v.
25  Sills, 156 F.3d 416, 427 (2d Cir. 1998).  As I now explain,
26  allowing Century's § 9607 claim would undermine the settlement

11

incentives.

In a contribution suit, each PRP will be liable to Noret only for that PRP's equitable share of Noret's costs. If a PRP settles with DTSC in a court-approved settlement, it will be released from any contribution claims Noret might assert. If Century is allowed to maintain its action, however, each PRP would potentially be liable to Century for the entire $2.8 million which it claims. Moreover, it is not clear whether settling with DTSC would protect a PRP from Century's joint and several claim.[9] With the threat of Century's $2.8 million claim, even if it settles with DTSC, a defendant PRP is less likely to settle with DTSC and more likely to continue litigating the case. As has been said:

> If a party could end run § 113(f)(2) and (3) by suing a settling party under § 107(a)(4)(B) for "costs of response," the settlement scheme would be bypassed. The incentive to early settlement would disappear, and the extent of litigation involved in a CERCLA case would increase dramatically. Consent agreements would no longer provide protection, and settling parties would have to endure additional rounds of litigation to apportion their losses.

In re Reading Co., 115 F.3d 1111, 1119 (3d Cir. 1997).

////

---

[9] Even if a party settles with DTSC, the "contribution protection" of section 113(f)(2) might not prevent Century from continuing to pursue its $2.8 million claim against it, because a court might interpret that section as barring only section 113(f) contribution suits. See Rumpke of Indiana, Inc. v. Cummins Engine Co., Inc., 107 F.3d 1235, 1242 (7th Cir. 1997) (holding that the contribution bar of section 113(f)(2) has no "role to play in a direct cost recovery action under § 107(a)"); Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp., 153 F.3d 344, 352 n.11 (6th Cir. 1998) (interpreting section 113(f)(2) to bar only contribution suits, not joint and several claims).

1   Because when read in context § 9607 does not provide for suit

2   by insurers of PRPs, and because such a suit would frustrate

3   congressional purpose, I conclude that Century's § 9607(a) claim

4   does not lie, and thus must be dismissed.[10]

5                                    **III.**

6                              **SUBROGATION**

7   Century also alleges subrogation pursuant to § 9612(c)(2).[11]

8   The statute provides for subrogation where an insurer has paid

9   response costs on behalf of its insured. (See note 7 for the full

10  text.)[12]   Ordinarily, the first step in legal analysis is a

---

[10]   Century also seeks a declaratory judgment, pursuant to
§9613(g)(2), finding the defendant PRPs are jointly and
severally liable for its response costs.  As explained
above, Century is barred from seeking joint and several
liability and thus its claim for declaratory relief must be
denied.

[11]   Noret and DTSC assert that Century may not recover the
$2.8 million that it has spent to indemnify Noret thus far
because that amount represents defense costs that are not
recoverable as response costs under CERCLA.  Because I
determine in the text that Century's suit is premature, it
follows these defendants' arguments are also premature.  The
question of what costs are recoverable is not a simple one.
See Louisiana-Pacific Corp. v. Beazer Materials & Services,
811 F.Supp. 1421 (E.D. Cal. 1993)(Karlton, J.)(holding
attorneys fees are not response costs and investigative
costs are response costs depending on whether they were
necessary or duplicative); see also Louisiana-Pacific Corp.
v. ASARCO Inc., 24 F.3d 1565 (9th Cir. 1994); Santa Fe
Pacific Realty Corp. v. United States, 780 F.Supp. 687 (E.D.
Cal. 1991).

[12]   Century refers to section 9607(e)(2) as "expressly
recognizing the rights of a person such as Century to bring
such [subrogation] actions."  Opposition to DTSC's Motion at
5.  I cannot agree.  Section 9607(e)(1) provides that a
person who may be liable for a release under CERCLA may not
transfer to any other person his or her liability pursuant

1  determination of the applicable law, here, whether Century's
2  subrogation rights are governed by state or federal law.[13]
3  Happily, I need not resolve the issue, since both federal and
4  California law follow the "made whole" doctrine.  Thus, as I now
5  explain, under either law, Century's suit is premature.

6  **A.   "MADE WHOLE" DOCTRINE**

7       Federal common law requires that, absent an agreement to the
8  contrary, an insurance company may not enforce a right to
9  subrogation until the insured has been fully compensated, that is,
10 has been made whole.  Barnes, 64 F.3d at 1394; Copeland Oaks v.
11 Haupt, 209 F.3d 811 (6th Cir. 2000).  California law also holds
12 that a subrogation action is not ripe where the insurer has paid
13 only a portion of the debt owed to the insured.  Sapiano v.
14 Williamsburg Nat. Ins. Co., 28 Cal.App.4th 533, 536 (1994) (citing
15 2 Cal. Insurance Law & Practice § 35.11[4][b], p. 35-47, fns.
16 omitted (1988 rev.)).  Under California law, the "made whole" rule
17 applies to both equitable and contractual subrogation, unless the
18 insurance policy contains a subrogation provision clearly holding

---

19      to an indemnification or any other agreement.  Section
20 9607(e)(2) clarifies that (e)(1) does not bar a person
   liable under CERCLA or a guarantor from bringing subrogation
21 actions.  A statutory section that reserves and does not bar
   a subrogation action does not in and of itself create the
22 right of action.  Section 9607(e)(2) simply "ensures that
   section 107(e)(1) will not be interpreted to abrogate
23 contractual agreements," such as insurance policies.  Niecko
   v. Emro Marketing Co., 769 F.Supp. 973, 989 (E.D. Mich.
24 1991).

25 [13]   Section 9612(c)(2) allows for subrogation, but it does
   not specify what body of law governs the action, and there
26 is negligible guidance on this issue.

1  otherwise.  Sapiano, 28 Cal.App.4th at 537.

2      Thus, Century's ability to exercise its right to subrogation

3  under § 9612(c) depends on whether that claim is ripe.  It is clear

4  that the suit is not ripe.

5      Throughout its papers and at oral argument, Century argued

6  that its action is timely because it has already incurred $2.8

7  million dollars in CERCLA response costs.  It does not contend that

8  the sum paid are Noret's total response costs under CERCLA and that

9  Noret has been fully compensated for its losses.  To the contrary,

10 Century asserts that it may recover the payments it has made to

11 date as a kind of first "installment" of the potentially

12 significant future expenses that it might incur.  Given the "made

13 whole" rule, Century cannot maintain its suit.  See Barnes, 64 F.3d

14 at 1394; Sapiano, 28 Cal.App.4th at 536.[14]

15 **B.    RESERVATION OF RIGHTS**

16     Century, while defending Noret, has reserved the issue of

17 coverage.[15]  Even if the "made whole" rule did not bar Century's

18 suit, the fact that it has reserved its right to contest coverage

19 would preclude it.  An insurer's ultimate liability is contingent

20 on the coverage issue.  Travelers Indem. Co. v. Dingwell, 844 F.2d

21 629, 638 (1st Cir. 1989).  It is established "that an insurer who

22
   ---

   [14]    No claim is made that Century's insurance policy
23 agreement with Noret contains a provision allowing for early
   suit.
24

   [15]    Noret and Century have a liability coverage action
25 pending in the Butte County Superior Court in which Century
   stipulated to pay for Noret's defense costs, but reserved
26 its right to deny coverage.

1   reserves the right to deny coverage cannot control the defense of

2   a lawsuit brought against its insured by an injured party." Id.

3   at 638.   Allowing the insurer to participate in the underlying

4   suit, however, could interfere with and unfairly restrict the

5   insured's defense.  If Century is allowed to pursue its subrogation

6   claim, its defense strategy will not only consist of reducing

7   Noret's share of total response costs, but could, and likely would,

8   include strategies to reduce its own obligation to indemnify Noret

9   under its coverage policies.  Under such circumstances, the parties

10  may encounter discovery and settlement conflicts with other PRPs,

11  resulting in prolonged litigation, again frustrating Congressional

12  intent to encourage quick settlements and remove the burden for

13  environmental cleanup costs away from taxpayers and onto the PRPs.

14  **C.    REAL PARTY IN INTEREST**

15       Century seeks to circumvent the limitations on subrogation

16  actions by arguing that it is the real party in interest because

17  it, not Noret, has partially paid for 'response costs' and must

18  therefore be allowed to bring the CERCLA claims as the subrogee.

19  Even assuming, arguendo, that Century could be recognized as a

20  partial subrogee in a CERCLA action, the Ninth Circuit has

21  concluded that "[u]nder federal law, a partial subrogor is a real

22  party in interest as to the entire claim only when the subrogor is

23  entitled to enforce the entire claim and payment to the subrogor

24  will completely extinguish the defendant's liability." Glacier

25  General Assurance Co. v. G. Gordon Symons Co., 631 F.2d 131, 134

26  ////

1 (9th Cir. 1980).[16]  If, as a result of Noret's contribution action,

2 it is found that the response costs paid by Century are more than

3 Noret's equitable share of total response costs, then Century will

4 be subrogated to Noret's claims to recover that excess amount.

5 Under these circumstances, Century's argument that it is the real

6 party in interest fails.

### IV.

### CONTRIBUTION

9       Century also sues the defendant PRPs for contribution under

10 section 9613(f).   While Noret may bring a contribution action

11 against the other defendant PRPs, and has done so, for all the same

12 reasons noted above, Century's contribution claim also fails.

13 Century may not bring its own independent contribution claim

14 because it is not itself a PRP.   Century may not exercise its

15 subrogee's rights until the total amount of response costs for

16 which Noret is responsible is determined through the contribution

17 action and until it has been fully compensated for its losses.

18 Century's claim for contribution must also be dismissed.

19 ////

20 ////

21 ////

___

22 [16]    In Glacier General Assurance Co., a plaintiff who was

23 partially indemnified for its costs by its insurers sought
to recoup its total losses from the defendants and the

24 insurers sought to intervene as the real parties in
interest.   The court found that even though the plaintiff

25 was partially compensated for its losses, it could collect
the entire loss from the defendants and the insurance

26 companies were not necessary parties.   Id. at 134-135.

**V.**

**SUPPLEMENTAL JURISDICTION**

This court may exercise supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367 if it has original jurisdiction.[17]  Given that the head of federal jurisdiction has been lost, Century's remaining state claims will also be dismissed.  See 28 U.S.C. § 1367(c).

////

////

////

////

////

////

////

---

[17]     The statute provides in pertinent part:

(a) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution . . . .

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367.

18

1

## VI.

2

**ORDER**

3    For the foregoing reasons, the court hereby ORDERS that

4  defendants City of Chico, California Water Service Company,

5  Sunset View Cemetery, Noret and Pedens' motions to dismiss and

6  for judgment on the pleadings are GRANTED.

7    IT IS SO ORDERED.

8    DATED:  January 6, 2004.

9

10                              LAWRENCE K. KARLTON
                               SENIOR JUDGE
11                             UNITED STATES DISTRICT COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

United States District Court
for the
Eastern District of California
January 8, 2004


* * CERTIFICATE OF SERVICE * *


2:02-cv-00442


CA Dept Toxic Sub

   v.

Chico City

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  January 8, 2004, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


          Timothy Eugene Sullivan              AR/LKK (x3)
          United States Department of Justice
          Attorney General's Office
          1515 Clay Street, 20th Floor
          Oakland, CA  94612-0550

          Francis Malcolm Goldsberry III
          Goldsberry Freeman Guzman and Ditora LLP
          777 12th Street, Suite 250
          Sacramento, CA  95814

          David R Frank
          Chico City Attorney's Office
          P O Box 3420
          Chico, CA  95927-3420

          Philip C Hunsucker
          Resolution Law Group
          3717 Mt Diablo Boulevard, Suite 200
          Lafayette, CA  94549-3589

          Brian L Zagon
          Resolution Law Group
          3717 Mt Diablo Boulevard, Suite 200
          Lafayette, CA  94549-3589

K Greg Peterson
Law Offices of K Greg Peterson
PO Box 254451
Sacramento, CA  95825

James Brittain Habegger
Fitzgerald Abbott and Beardsley
1221 Broadway, 21st Floor
Oakland, CA  94612-1837

Paul D Sheldon
Law Offices of Patrick D Riddle
1811 Grand Canal Boulevard, Suite 2
Stockton, CA  95207-8107

Resto Ernest Montanari III
Musacchio and Montanari PC
500 Ygnacio Valley Road, Suite 328
Walnut Creek, CA  94596

Steven H Goldberg
Downey Brand LLP
555 Capitol Mall, Tenth Floor
Sacramento, CA  95814-4686

Richard L Crabtree
Law Offices of Richard L Crabtree
854 Manzanita Court, Suite 110
Chico, CA  95926

Thomas John McDonnell
Shuttleworth and McDonnell
13620 Lincoln Way, Suite 240
Auburn, CA  95603

Edward D Chapin
Gordon and Rees LLP
101 West Broadway, Suite 1600
San Diego, CA  92101

William J Peters
Gordon and Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA  94111

Lee N Smith
Stoel Rives LLP
770 L Street, Suite 990
Sacramento, CA  95814

Ken D Baker
Law Offices of Ken Baker
1430 East Avenue, Suite 2-B
Chico, CA  95926

Jack L. Wagner, Clerk

by: Deputy Clerk