BILL LOCKYER
Attorney General of the State of California
THEODORA BERGER
Senior Assistant Attorney General
ROSE B. FUA
TIMOTHY E. SULLIVAN (S.B. # 197054)
Deputy Attorneys General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 622-2100
Fax: (510) 622-2270

Attorneys for Plaintiff
CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICO, CALIFORNIA, et al.,<br><br>Defendants. | Case No. CIV. S-02-0442 LKK DAD<br><br>**SETTLEMENT AGREEMENT AND CONSENT DECREE BETWEEN DTSC AND NORET, INC., NORVILLE WEISS, AND JANET WEISS** |

**INTRODUCTION**

Plaintiff, the California Department of Toxic Substances Control ("DTSC"), filed an amended complaint on December 3, 2002, (the "Complaint") in the United States District Court for the Eastern District of California (the "Court"), pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq., and California state law governing the release of hazardous substances, and nuisance. This Consent Decree embodies the settlement reached between DTSC and defendants Noret, Inc., Norville Weiss, and Janet Weiss (collectively referred to herein as "Noret").

The Court, on the motion and with the consent of DTSC and Noret, hereby **ORDERS, ADJUDGES, AND DECREES** as follows:

1. **DEFINITIONS**

A. All terms used in this Consent Decree that are defined in section 101 of CERCLA, 42 U.S.C. § 9601, shall have the same meaning set forth in that section.

B. "DTSC," as used in this Consent Decree, shall mean DTSC, its predecessors including, but not limited to, the Toxic Substances Control Program of the State of California Department of Health Services, and its successors.

C. "Chico Central Plume" means both the soil and groundwater existing in the shallow, intermediate, and/or lower aquifers underlying the city of Chico mostly north of Big Chico Creek that are contaminated with perchloroethylene and its breakdown products, the area of which is roughly represented by Figure 2-1 of the "Draft Remedial Action Plan, Chico Central Plume, Chico, California" dated March 1, 2006 (attached hereto as Exhibit A and incorporated herein by this reference), and all locations where such contaminants may come to be located.

D. "Response Costs," as used in this Consent Decree, shall include all costs of "removal," "remedial action," or "response" (as those terms are defined by section 101 of CERCLA), incurred or to be incurred by DTSC in response to the release or threatened release of hazardous substances at, in, or from the Chico Central Plume. Said term shall include, but not be limited to, direct labor costs; contractor, consultant and expert costs; travel and any other out-of-pocket expenses; the costs of identifying, developing evidence against, and pursuing claims against persons or entities liable for the release or threatened release of hazardous substances at, in, or from the Chico Central Plume; indirect costs; oversight costs; applicable interest charges; and attorneys' fees.

E. "Remedial Action Plan," as used in this Consent Decree, shall mean a remedial action plan prepared to address the release or threatened release of hazardous substances at, in, or from the Chico Central Plume and finally approved by DTSC as described in California Health and Safety Code section 25356.1, and also includes any amendments to the

remedial action plan that are subsequently approved by DTSC.

F. "Proposed Remedy" means a remedial action to address contamination at, in, or from the Chico Central Plume, as set forth in detail as "Modified Alternative G" in the Draft Remedial Action Plan dated March 1, 2006

2. **RECITALS**

A. DTSC is the California state agency with primary jurisdiction over the response to the release and threatened release of hazardous substances at, in, or from the Chico Central Plume.

B. By and through its Complaint, DTSC seeks to recover jointly and severally from Noret, and other defendants who are not parties to this Consent Decree, all costs it has incurred in response to releases and/or threatened releases of hazardous substances at, in, or from the Chico Central Plume, pursuant to section 107(a) of CERCLA. DTSC also seeks a declaratory judgment that defendants are jointly and severally liable for all additional costs incurred by DTSC in response to the releases and/or threatened releases of hazardous substances at, in, or from the Chico Central Plume pursuant to section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2). DTSC alleges that it will continue to incur Response Costs until the remedy selected in the Remedial Action Plan, and implementation, operation and maintenance of that remedy, is completed. DTSC also seeks injunctive relief to abate a public nuisance (California Health and Safety Code section 58009) and to abate an imminent or substantial endangerment to public health and safety or to the environment (California Health and Safety Code section 25358.3). DTSC also seeks to enforce administrative orders issued to various defendants for investigation and remediation of the Chico Central Plume (California Health and Safety Code section 25358.3) and seeks damages suffered by DTSC as a result of the failure of certain defendants to properly undertake a removal or remedial action (California Health and Safety Code section 25359).

C. By entering into this Consent Decree, Noret makes no admission of liability.

D. Each of the parties to this Consent Decree represents and acknowledges

that, in deciding whether to enter into this Consent Decree, it has not relied on any statement of fact, statement of opinion, or representation, express or implied, made by any other party to this Consent Decree. Each of the parties to this Consent Decree has investigated the subject matter of this Consent Decree to the extent necessary to make a rational and informed decision to execute it, and has had the opportunity to consult independent counsel.

E. DTSC and Noret agree that settlement without further litigation and without the admission or adjudication of any issue of fact or law is the most appropriate means of resolving this action. This Consent Decree was negotiated and executed by DTSC and Noret in good faith to avoid prolonged and complicated litigation. DTSC, moreover, has negotiated and executed this Consent Decree to further the public interest and to protect human health and the environment.

3. **JURISDICTION**

This Court has jurisdiction over DTSC's federal law claims, which arise under CERCLA, pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b). This Court has jurisdiction over DTSC's state law claims under the supplemental jurisdiction provision of 28 U.S.C. § 1367(a) and under 28 U.S.C. § 2201, in that the state and federal claims arise from common facts relating to the release of hazardous substances and remediation of or failure to remediate the resulting contamination. This Court has personal jurisdiction over each of the parties to this Consent Decree. Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 9613(b). This Court, further, has the authority to enter this Consent Decree as a consent decree of the Court.

4. **SETTLEMENT OF DISPUTED CLAIMS**

4.1 This Consent Decree represents a fair, reasonable, and equitable settlement of the matters addressed herein.

4.2 For the purposes of this Consent Decree, Noret admits none of the allegations of the Complaint. Nothing in this Consent Decree shall be construed as an admission of any issue of law or fact or of any violation of law. Notwithstanding the foregoing, Noret acknowledges its responsibility pursuant to this Consent Decree to perform those acts it

has agreed to undertake in this Consent Decree, and shall not deny such responsibility in any proceeding brought by DTSC to enforce this Consent Decree.

4.3 Except as set forth in section 11 of this Consent Decree, nothing in this Consent Decree shall prejudice, waive, or impair any right, remedy or defense that Noret may have in any other or further legal proceeding.

5. [Reserved]

6. [Reserved]

7. **PAYMENT, ESCROW, AND WORK OBLIGATIONS OF NORET**

7.1 Payment and escrow account: Upon the Effective Date, Noret shall be liable to DTSC for a total payment of two hundred twenty thousand dollars ($220,000.00). This amount shall be deposited into the "Chico Central Plume Escrow Account" (referred to hereinafter as the "Escrow Account"), which is further described in the escrow instructions attached hereto as Exhibit B (referred to hereinafter as the "Escrow Instructions") and incorporated herein by reference.

(a) Payments to the Escrow Account shall be made by Noret according to the following schedule, which the parties expect will result in Noret paying the entire two hundred twenty thousand dollars ($220,000.00) into the Escrow Account prior to the Effective Date:

(1) Within three business days of receipt of escrow instructions signed on behalf of DTSC, Noret will deposit forty thousand dollars ($40,000.00) into the Escrow Account.

(2) Noret will use its best efforts to deposit the remaining one hundred eighty thousand dollars ($180,000.00) of its obligation into the Escrow Account as soon as possible. At the latest, Noret shall deposit the remaining one hundred eighty thousand dollars ($180,000.00) into the Escrow Account no later than five business days after the filing with the Court of this signed Consent Decree.

(b) Upon termination of the Escrow Account, except as otherwise required by the terms of the Escrow Instructions, DTSC shall be paid all money remaining in the

Escrow Account.

7.2 Work to be performed by Noret:

(a) When requested to do so in writing by DTSC, Noret will direct one of its contractors, Adverus and/or EFI (hereinafter referred to as the "Contractors"), to conduct work toward completion of a Remedial Action Plan for the Chico Central Plume or to conduct further investigations at the Chico Central Plume, including but not limited to preparing studies and documentation required by the California Environmental Quality Act and undertaking groundwater sampling, analysis, and reporting. DTSC's formal request for such work will be communicated in writing through Noret's counsel.

(b) The work performed by the Contractors pursuant to section 7.2(a), as well as Noret's counsel's time to communicate DTSC's formal requests to the Contractors after the Effective Date, will be paid for with funds drawn from the Escrow Account pursuant to the Escrow Instructions. Other than Noret's deposits into the Escrow Account totaling two hundred twenty thousand dollars ($220,000.00) as required by section 7.1(a), neither Noret nor its counsel shall be responsible for paying compensation to the Contractors for work performed by the Contractors pursuant to section 7.2(a).

(c) The parties agree that Noret's obligation to comply with requests made by DTSC pursuant to section 7.2(a) begins three business days from receipt of Escrow Instructions signed by on behalf of DTSC.

(d) Noret consents to allow the Contractors to communicate directly with DTSC regarding the work to be performed pursuant to section 7.2(a).

7.3 Except as otherwise stated in section 7.2, nothing in this Consent Decree requires Noret to conduct or pay for any further work in the Chico Central Plume.

7.4 Noret will transfer ownership of all monitoring wells it owns in the Chico Central Plume to DTSC, effective upon the Effective Date. Noret will prepare documentation necessary to effectuate the transfer of ownership of the wells, and provide to DTSC keys to access monitoring wells in the groundwater sampling and monitoring program. After transfer of ownership of the wells to DTSC, Noret shall have no further obligations with respect to such

wells.

7.5 Immediately upon entry of this Consent Decree, Noret will require the Contractors to provide to DTSC in electronic format historical site data, site figures, groundwater model files, and word processing files containing the text of final reports submitted to DTSC by Noret.

8. **GOVERNMENT LIABILITIES**

Neither DTSC nor any other department or agency of the State of California shall be liable for any injuries or damages to persons or property resulting from acts or omissions by Noret in carrying out activities pursuant to this Consent Decree. Neither DTSC nor any other department or agency of the State of California shall be held as a party to any contract entered into by Noret or its agents in carrying out activities pursuant to this Consent Decree unless the contract is entered into in writing by DTSC or such other department or agency of the State of California.

9. **COVENANT NOT TO SUE BY DTSC**

9.1 Except as specifically provided in sections 9.2 and 10, below, and except as may be necessary to enforce the terms of this Consent Decree, as of the date this Consent Decree is entered as a consent decree of the Court, DTSC covenants not to sue Noret for "Matters Addressed" by this Consent Decree. "Matters Addressed" includes any and all civil liability for reimbursement of all or any portion of DTSC's Response Costs, past or future, declaratory relief, injunctive relief or any other relief under CERCLA, the Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code sections 25300 et seq., or common law for liability for Response Costs and/or response actions, with regard to releases or threatened releases of perchloroethylene and its breakdown products at, in, or from the Chico Central Plume, as set forth in the Complaint.

9.2 "Matters Addressed" shall not include, and the covenant not to sue set forth in section 9.1 above does not pertain to, any matters other than those expressly specified in section 9.1. DTSC reserves, and this Consent Decree is without prejudice to, all rights, claims and causes of action DTSC may have against Noret with respect to all other matters, including

releases or threatened releases of hazardous substances in the city of Chico other than releases or threatened releases of perchloroethylene and its breakdown products at, in, or from the Chico Central Plume.

10. **RESERVATION OF RIGHTS**

10.1 The Covenant Not to Sue set forth in section 9.1 above does not pertain to the following matters, which DTSC reserves, and this Consent Decree is without prejudice to all rights and claims of DTSC against each Noret with respect to the following:

(a) failure of Noret to meet the requirements of this Consent Decree applicable to it;

(b) damage to natural resources, as defined in section 101(6) of CERCLA, 42 U.S.C. § 9601(6), including all costs incurred by any natural resources trustees; and

(c) criminal liability.

10.2 Except as expressly provided in this Consent Decree, nothing in this Consent Decree is intended nor shall it be construed to preclude DTSC from exercising its authority under any law, statute or regulation. Furthermore, nothing in this Consent Decree is intended, nor shall it be construed, to preclude any other state agency, department, board or entity or any federal entity from exercising its authority under any law, statute or regulation.

11. **COVENANT NOT TO SUE BY NORET**

11.1 Noret covenants not to sue, and agrees not to assert any claims or causes of action against, DTSC, or its contractors or employees, for any costs or damages Noret might incur or for any injuries or losses Noret might suffer as a result of its performance of the requirements of this Consent Decree. Noret further covenants not to sue, and agrees not to assert any claims or causes of action against, DTSC, or its contractors or employees, for any and all civil liability for reimbursement of all or any portion of Noret's response costs, past or future, declaratory relief, injunctive relief or any other relief under CERCLA, the Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code sections 25300 et seq., or common law for liability for response costs and/or response actions, with regard to

releases or threatened releases of perchloroethylene and its breakdown products at, in, or from the Chico Central Plume.

11.2 Noret agrees that at the time the Court approves a settlement between DTSC and any other party to this litigation, Noret will release that settling party from any and all claims of civil liability for reimbursement of all or any portion of Noret's response costs, past or future, declaratory relief, injunctive relief or any other relief under CERCLA, the Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code sections 25300 et seq., or common law for liability for response costs and/or response actions, with regard to releases or threatened releases of perchloroethylene and its breakdown products at, in, or from the Chico Central Plume, provided that the settling party releases its claims against Noret. Noret further agrees that it will not object to or oppose any settlement entered into between DTSC and another party to this litigation regarding that settling party's liability for releases of perchloroethylene and its breakdown products at, in, or from the Chico Central Plume, provided that the settling party releases its claims against Noret and does not oppose the settlement between DTSC and Noret set forth in this Consent Decree.

12. **EFFECT OF CONSENT DECREE**

12.1 This Consent Decree constitutes the resolution of Noret's liability to DTSC with respect to the Matters Addressed in a judicially approved settlement within the meaning of section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2).

12.2 Accordingly, upon entry of this Consent Decree as a consent decree of the Court, and provided that Noret performs all of its obligations under this Consent Decree, Noret shall be entitled, as of the date this Consent Decree is entered as a consent decree of the Court, to protection against all claims for contribution, pursuant to section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for the Matters Addressed by this Consent Decree (as described in section 9), to the fullest extent permitted by law.

12.3 Except as specifically provided in this Consent Decree, nothing in this Consent Decree is intended, nor shall be construed, to waive, release, or otherwise affect any right, claim, or cause of action held by any party to this Consent Decree against, or to provide a

covenant not to sue to, any third person not a party to this Consent Decree, or to in any way limit, restrict, or impair the right of any party to this Consent Decree to assert rights, claims, causes of actions, and defenses against any third person not a party to this Consent Decree, including without limitation, the right to seek payment, reimbursement, contribution, or indemnity from such persons for obligations incurred or to be incurred, or actions taken or to be taken, under this Consent Decree. Except as specifically provided in this Consent Decree, DTSC and Noret expressly reserve any rights, claims, or causes of actions they might have against any third person not a party to this Consent Decree.

12.4 This Consent Decree is contingent and dependent on all of its terms being approved and entered by the Court. If the Court does not approve and enter this Consent Decree, DTSC and Noret reserve all of their respective rights, remedies, and defenses.

12.5 This Consent Decree is not intended, nor shall it be construed, to limit or otherwise affect DTSC's right to select a remedial action for the Chico Central Plume that is different from or inconsistent with the Proposed Remedy.

13. **RETENTION OF RECORDS**

13.1 Noret shall provide to DTSC, upon request, copies of all documents and information within its possession or control or that of their contractors or agents relating to the implementation of this Consent Decree, including, but not limited to design specifications, reports of construction activities, contracts, invoices, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, easements, permits, grants of access to public property, and city government resolutions. Such records shall be preserved by Noret until 10 years after the entry of this Consent Decree, or 10 years after creation of a record or document, whichever is later.

13.2 Noret may assert that certain documents, records, and other information are privileged under the attorney-client privilege or any other privilege recognized by law. If Noret asserts such a privilege, it shall provide DTSC with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of

each addressee and recipient of the document, record, or information; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Noret. However, no documents, records, or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged. If a claim of privilege applies only to a portion of a document, the document shall be provided to DTSC in redacted form to mask the privileged information only. Noret shall retain all records and documents it claims to be privileged until DTSC has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Noret's favor.

14. **NOTIFICATION**

14.1. Notification to or communication between the parties to this Consent Decree as required or provided for in this Consent Decree shall be addressed as follows (except that monitoring data required to be sent to DTSC pursuant to section 7 shall be sent only to Mr. Tjosvold):

As to DTSC:

Jim Tjosvold
Chief, Northern California Central Cleanup Operations Branch
Department of Toxic Substances Control
8800 Cal Center Drive
Sacramento, CA 95826-3200
Attn: Donald Mandel, Project Manager for Chico Central Plume
facsimile: (916) 255-3696

Steve Koyasako, Esq.
Office of Legal Counsel
Department of Toxic Substances Control
1001 "I" Street
P.O. Box 806
Sacramento, CA 95812
facsimile: (916) 323-5542

Timothy E. Sullivan, Esq.
Deputy Attorney General
California Department of Justice
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
facsimile: (510) 622-2270

As to Noret:

Norville R. Weiss
Noret, Inc.
P.O. Box 806
Chico, California 95927

Philip C. Hunsucker, Esq.
Resolution Law Group, P.C.
3717 Mt. Diablo Blvd.
Suite 200
Lafayette, CA 94549
facsimile: (925) 284-0870

14.2. Upon 10 days notice to the other party, a party to this Consent Decree may substitute another person for an addressee named above to receive notifications or communications as required or provided for in this Consent Decree.

15. **MODIFICATION OF CONSENT DECREE**

This Consent Decree may only be modified upon the written agreement of DTSC and Noret and the approval of the Court, or upon order of the Court after noticed motion by a party to this Consent Decree.

16. **APPLICATION OF CONSENT DECREE**

This Consent Decree shall apply to and be binding upon DTSC, Noret, and each of their respective successors and assigns. The provisions of this Consent Decree shall inure to the benefit of DTSC, Noret, and each of their respective successors and assigns. The provisions of this Consent Decree shall also inure to the benefit of the officers, directors, employees and agents of Noret, in their capacities as such.

17. **AUTHORITY TO ENTER**

Each signatory to this Consent Decree certifies that he or she is fully authorized by the party he or she represents to enter into this Consent Decree, to execute it on behalf of the party represented, and legally to bind that party.

18. **INTEGRATION**

This Consent Decree, including the exhibits and other materials incorporated herein by reference, constitutes the entire agreement between DTSC and Noret and may not be amended or supplemented except as provided for in this Consent Decree.

19. **RETENTION OF JURISDICTION**

The Court shall retain jurisdiction of this matter for the purpose of enforcing the terms of this Consent Decree.

20. **EXECUTION OF DECREE**

This Consent Decree may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

21. **INTERPRETATION**

California law governs the interpretation of this Consent Decree. This Consent Decree shall be deemed to have been drafted equally by all parties hereto.

22. **ATTORNEYS FEES AND COSTS**

As to each other, each party to this Consent Decree shall bear its own costs, attorneys' fees, expert witness fees and all other costs of litigation. This paragraph shall have no effect on the parties' right to recover these fees or costs from any other party.

23. **APPROVALS OF PARTIES**

Plaintiff DTSC consents to this Consent Decree by its authorized representative as follows:

CALIFORNIA DEPARTMENT OF
TOXIC SUBSTANCES CONTROL

Dated: 9/8/06

/s/
James Tjosvold
Chief, Northern California-Central Cleanup Operations Branch
California Department of Toxic Substances Control

Noret, Inc. consents to this Consent Decree by its authorized representative as follows:

NORET, INC.

DATED: 9/8/06

By: /s/
Its: President

NORVILLE R. WEISS

DATED: 9/8/06

/s/

JANET L. WEISS

DATED: 9/8/06

/s/

APPROVED AS TO FORM:

Dated: 9/8/06

BILL LOCKYER, Attorney General
of the State of California
THEODORA BERGER
Senior Assistant Attorney General
ROSE B. FUA
Deputy Attorney General

By /s/
TIMOTHY E. SULLIVAN
Deputy Attorney General
Attorneys for Plaintiff California Department of Toxic Substances Control

Dated: 9/8/06

By: /s/
PHILIP C. HUNSUCKER
BRIAN L. ZAGON
DAVID RABBINO
Resolution Law Group, P.C.
Attorneys for Noret, Inc., Norville R. Weiss, and Janet L. Weiss

**IT IS SO ORDERED, ADJUDGED AND DECREED:**

Dated: October 4, 2006.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT