EDMUND G. BROWN JR.
Attorney General of the State of California
JANET GAARD
  Acting Chief Assistant Attorney General
THEODORA BERGER
  Senior Assistant Attorney General
SALLY KNOX
  Supervising Deputy Attorney General
TIMOTHY E. SULLIVAN (S.B. # 197054)
  Deputy Attorneys General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 622-2100
Fax: (510) 622-2270

Attorneys for Plaintiff
CALIFORNIA DEPARTMENT OF TOXIC
SUBSTANCES CONTROL

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICO, CALIFORNIA, et al.,<br><br>Defendants. | Case No. CIV. S-02-0442 LKK DAD<br><br>**SETTLEMENT AGREEMENT AND CONSENT DECREE BETWEEN DTSC, SUNSET VIEW CEMETERY ASSOCIATION, JOHN PEDEN, LORENA PEDEN, PEDEN ENTERPRISES, INC., METCALF & EDDY, INC., AND CHICO UNIFIED SCHOOL DISTRICT** |

## **INTRODUCTION**

Plaintiff, the California Department of Toxic Substances Control ("DTSC"), filed an

amended complaint on December 3, 2002, (the "Complaint") in the United States District Court

for the Eastern District of California (the "Court"), pursuant to the Comprehensive

Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et

1.

1  seq., and California state law governing the release of hazardous substances, and nuisance.  This

2  Consent Decree embodies the settlement reached between DTSC and defendants John Peden,

3  Lorena Peden, and Peden Enterprises, Inc., (collectively referred to herein as "the Pedens"),

4  Sunset View Cemetery Association, Chico Unified School District, and Metcalf & Eddy, Inc.,

5  all of which are collectively referred to herein as "Settling Defendants."

6      The Court, on the motion and with the consent of DTSC and the Settling Defendants,

7  hereby **ORDERS, ADJUDGES, AND DECREES** as follows:

8      1.    **DEFINITIONS**

9          A.    All terms used in this Consent Decree that are defined in section 101 of

10  CERCLA, 42 U.S.C. § 9601, shall have the same meaning set forth in that section.

11          B.    "DTSC," as used in this Consent Decree, shall mean DTSC, its

12  predecessors including, but not limited to, the Toxic Substances Control Program of the State of

13  California Department of Health Services, and its successors.

14          C.    "Chico Central Plume" means both the soil and groundwater existing in

15  the shallow, intermediate, and/or lower aquifers underlying the city of Chico mostly north of

16  Big Chico Creek that are contaminated with perchloroethylene and its breakdown products, the

17  area of which is roughly represented by Figure 2-1 of the "Draft Remedial Action Plan, Chico

18  Central Plume, Chico, California" dated March 1, 2006 (attached hereto as Exhibit A and

19  incorporated herein by this reference), and all locations where such contaminants may come to

20  be located.

21          D.    "Response Costs," as used in this Consent Decree, shall include all costs

22  of  "removal," "remedial action," or "response" (as those terms are defined by section 101 of

23  CERCLA), incurred or to be incurred by DTSC in response to the release or threatened release

24  of hazardous substances at, in, or from the Chico Central Plume.  Said term shall include, but

25  not be limited to, direct labor costs; contractor, consultant and expert costs; travel and any other

26  out-of-pocket expenses; the costs of identifying, developing evidence against, and pursuing

27  claims against persons or entities liable for the release or threatened release of hazardous

28  substances at, in, or from the Chico Central Plume; indirect costs; oversight costs; applicable

2.

1   interest charges; and attorneys' fees.

2          E.     "Remedial Action Plan," as used in this Consent Decree, shall mean a

3   remedial action plan prepared to address the release or threatened release of hazardous

4   substances at, in, or from the Chico Central Plume and finally approved by DTSC as described

5   in California Health and Safety Code section 25356.1, and also includes any amendments to the

6   remedial action plan that are subsequently approved by DTSC.

7          F.     "Proposed Remedy" means a remedial action to address contamination at,

8   in, or from the Chico Central Plume, as set forth in detail as "Modified Alternative G" in the

9   Draft Final Remedial Action Plan dated March 28, 2007.

10          G.     "Effective Date" is the day on which this Consent Decree is entered as an

11   order of the Court.

12      2.     **RECITALS**

13          A.     DTSC is the California state agency with primary jurisdiction over the

14   response to the release and threatened release of hazardous substances at, in, or from the Chico

15   Central Plume.

16          B.     By and through its Complaint, DTSC seeks to recover jointly and

17   severally from Settling Defendants, and other defendants who are not parties to this Consent

18   Decree, all costs it has incurred in response to releases and/or threatened releases of hazardous

19   substances at, in, or from the Chico Central Plume, pursuant to section 107(a) of CERCLA.

20   DTSC also seeks a declaratory judgment that defendants are jointly and severally liable for all

21   additional costs incurred by DTSC in response to the releases and/or threatened releases of

22   hazardous substances at, in, or from the Chico Central Plume pursuant to section 113(g)(2) of

23   CERCLA, 42 U.S.C. § 9613(g)(2).  DTSC alleges that it will continue to incur Response Costs

24   until the remedy selected in the Remedial Action Plan, and implementation, operation and

25   maintenance of that remedy, is completed.  DTSC also seeks injunctive relief to abate a public

26   nuisance (California Health and Safety Code section 58009) and to abate an imminent or

27   substantial endangerment to public health and safety or to the environment (California Health

28   and Safety Code section 25358.3).  DTSC also seeks to enforce administrative orders issued to

3.

1  various defendants for investigation and remediation of the Chico Central Plume (California

2  Health and Safety Code section 25358.3) and seeks damages suffered by DTSC as a result of

3  the failure of certain defendants to properly undertake a removal or remedial action (California

4  Health and Safety Code section 25359).  DTSC's Complaint is hereby deemed amended to state

5  claims against Chico Unified School District and Metcalf & Eddy, Inc.

6       C.      By entering into this Consent Decree, Settling Defendants make no

7  admission of liability.

8       D.      Each of the parties to this Consent Decree represents and acknowledges

9  that, in deciding whether to enter into this Consent Decree, it has not relied on any statement of

10  fact, statement of opinion, or representation, express or implied, made by any other party to this

11  Consent Decree.  Each of the parties to this Consent Decree has investigated the subject matter

12  of this Consent Decree to the extent necessary to make a rational and informed decision to

13  execute it, and has had the opportunity to consult independent counsel.

14       E.      DTSC and Settling Defendants agree that settlement without further

15  litigation and without the admission or adjudication of any issue of fact or law is the most

16  appropriate means of resolving this action.  This Consent Decree was negotiated and executed

17  by DTSC and Settling Defendants in good faith to avoid prolonged and complicated litigation.

18  DTSC, moreover, has negotiated and executed this Consent Decree to further the public interest

19  and to protect human health and the environment.

20       3.    **JURISDICTION**

21       This Court has jurisdiction over DTSC's federal law claims, which arise under

22  CERCLA, pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b).  This Court has jurisdiction

23  over DTSC's state law claims under the supplemental jurisdiction provision of 28 U.S.C.

24  § 1367(a) and under 28 U.S.C. § 2201, in that the state and federal claims arise from common

25  facts relating to the release of hazardous substances and remediation of or failure to remediate

26  the resulting contamination.  This Court has personal jurisdiction over each of the parties to this

27  Consent Decree.  Venue is proper in the Eastern District of California pursuant to 28 U.S.C.

28  § 1391(b) and 42 U.S.C. § 9613(b).  This Court, further, has the authority to enter this Consent

4.

1    Decree as a consent decree of the Court.

2         4.    **SETTLEMENT OF DISPUTED CLAIMS**

3         4.1    This Consent Decree represents a fair, reasonable, and equitable

4    settlement of the matters addressed herein.

5         4.2    For the purposes of this Consent Decree, Settling Defendants admit none

6    of the allegations of the Complaint.  Nothing in this Consent Decree shall be construed as an

7    admission of any issue of law or fact or of any violation of law.  Notwithstanding the foregoing,

8    each Settling Defendant acknowledges its responsibility pursuant to this Consent Decree to

9    perform those acts it has agreed to undertake in this Consent Decree, and shall not deny such

10   responsibility in any proceeding brought by DTSC to enforce this Consent Decree.

11        4.3    Except as set forth in section 11 of this Consent Decree, nothing in this

12   Consent Decree shall prejudice, waive, or impair any right, remedy or defense that a Settling

13   Defendant may have in any other or further legal proceeding.

14        5.    **PAYMENTS BY AND ON BEHALF OF SETTLING PARTIES**

15        5.1    Payments required by this Consent Decree

16             (a)    To obtain the benefits of sections 9, 11, and 12 of this Consent

17   Decree (per section 5.4 below), Sunset View Cemetery Association must ensure that, within

18   30 days of the Effective Date, the following funds of the specified amounts are delivered to

19   counsel for the Sunset View Cemetery Association to be held in trust for DTSC, as described in

20   section 5.2:

21             (1)    Payment of one million dollars ($1,000,000.00) made by

22   the Sunset View Cemetery Association;

23             (2)    Payment of two million seven hundred fifty thousand

24   dollars ($2,750,000.00) made by a first insurance company;

25             (3)    Payment of three hundred thousand dollars ($300,000.00)

26   made by a second insurance company.

27             (b)    To obtain the benefits of sections 9, 11, and 12 of this Consent

28   Decree (per section 5.4 below), Sunset View Cemetery Association and the Pedens, jointly,

5.

1  must ensure that, within 30 days of the Effective Date, payment of three million two hundred

2  thousand dollars ($3,200,000.00) made by a third insurance company is delivered to counsel for

3  the Sunset View Cemetery Association to be held in trust for DTSC, as described in section 5.2.

4          (c)     To obtain the benefits of sections 9, 11, and 12 of this Consent

5  Decree (per section 5.4 below), the Pedens must ensure that, within 30 days of the Effective

6  Date, an additional fifty thousand dollars ($50,000.00) is delivered to counsel for the Sunset

7  View Cemetery Association to be held in trust for DTSC, as described in section 5.2.

8          (d)     Upon the Effective Date, Metcalf & Eddy, Inc. shall be liable to

9  DTSC for a total payment of one hundred thousand dollars ($100,000.00).  To obtain the

10  benefits of sections 9, 11, and 12 of this Consent Decree (per section 5.4 below), within 30 days

11  of the Effective Date, Metcalf & Eddy, Inc. must pay this amount to DTSC as described below

12  in section 5.3.

13          (e)     Upon the Effective Date, Chico Unified School District shall be

14  liable to DTSC for a total payment of fifty thousand dollars ($50,000.00).  To obtain the

15  benefits of sections 9, 11, and 12 of this Consent Decree (per section 5.4 below), within 30 days

16  of the Effective Date, Chico Unified School District must pay this amount to DTSC as

17  described below in section 5.3.

18          (f)     If, within 60 days of the Effective Date, sections 9, 11, and 12 of

19  this Consent Decree have become applicable to Sunset View Cemetery Association, then Sunset

20  View Cemetery Association will pay, within one year of the Effective Date, an additional one

21  million fifty thousand dollars ($1,050,000.00), plus interest, to DTSC as described below in

22  section 5.3.  Interest will begin to accrue starting on the Effective Date at the rate of 5.236

23  percent per year, which is the year 2007 California State Controller's Office's "Surplus Money

24  Investment Fund, Apportionment Yield Rate."  Sunset View Cemetery Association can make

25  this second installment payment at any time within the one year period after the Effective Date

26  and will only be subject to interest incurred on this second installment as of the date of actual

27  payment of the second installment.  There is nothing in this paragraph that precludes Sunset

28  Cemetery Association from also paying this second installment to DTSC within 30 days of the

6.

1   Effective Date, as provided for in Paragraph 5.1(a)(1) of this Consent Decree in regards to the

2   first installment payment, which if Sunset View Cemetery Association so chooses would mean

3   no interest would accrue or be due to DTSC in connection with Sunset View Cemetery

4   Association's payment of this second installment.

5        5.2    Collection of settlement funds to be held in trust

6             (a)    Counsel for the Sunset View Cemetery Association will accept

7   and hold in trust for DTSC the payments required by sections 5.1(a), (b), and (c) of this Consent

8   Decree until such time the funds are to be delivered to DTSC pursuant to the terms of this

9   Consent Decree.

10             (b)    Payments described in sections 5.1(a), (b), and (c) will be

11   delivered to counsel for Sunset View Cemetery Association at the following address:

12                      J. Brittain Habegger
                        Paul S. Kibel
13                      Fitzgerald Abbott & Beardsley LLP
                        1221 Broadway, 21st Floor
14                      Oakland, CA 94612

15             (c)    Sunset View Cemetery Association will direct its counsel

16   immediately to send to DTSC, in the manner specified in section 5.3, any of the payments

17   described below, if, on or before the day that is 30 days from the Effective Date, counsel for the

18   Sunset View Cemetery Association has received:

19                      (1)    All of the payments that are the responsibility of the

20   Sunset View Cemetery Association (specified in sections 5.1(a) and (b)), or

21                      (2)    All of the payments that are the responsibility of the

22   Pedens (specified in sections 5.1(b) and (c)), or

23                      (3)    Both (1) and (2), above.

24        5.3    All payments sent to DTSC pursuant to this Consent Decree will be

25   made by check made out to the California Department of Toxic Substances Control and

26   identified with the Court's docket number of this case and "Site No. 100035." Checks shall be

27   sent to the following address:

28                      Department of Toxic Substances Control

1   Cashier, Hazardous Substance Account
    P. O. Box 806
2   Sacramento, CA 95812-0806

3   Copies of the checks shall be mailed to:

4   Jim Tjosvold
    Chief, Northern California Central Cleanup Operations Branch
5   Department of Toxic Substances Control
    8800 Cal Center Drive
6   Sacramento, CA 95826-3200
    Attn: Donald Mandel, Project Manager for Chico Southwest Plume
7
    Timothy E. Sullivan
8   Office of the Attorney General
    1515 Clay Street, 20th Floor
9   Oakland, CA 94612

10  Joseph A. Salazar, Jr.
    Lewis Brisbois Bisgaard & Smith LLP
11  2500 Venture Oaks Way, Suite 200
    Sacramento, CA 95833
12
           5.4   If, on the day that is 30 days from the Effective Date, any of the
13
    payments specified in sections 5.1(a), (b), (c), (d), or (e) have not been delivered as required by
14
    those sections, then sections 9, 11, and 12 of this Consent Decree do not include, apply to, or
15
    otherwise benefit the Settling Defendant (or Defendants) responsible for ensuring delivery of
16
    that payment, and that Settling Defendant may not raise those sections as a defense to any claim
17
    of liability.
18
           6.   **ACCESS TO PROPERTY**
19
           6.1   Sunset View Cemetery Association:  Sunset View Cemetery Association
20
    agrees to allow DTSC, its agents, or contractors reasonable access to and use of property under
21
    its control or ownership in Chico, California, for the purposes of performing removal or
22
    remedial actions, including but not limited to the installation of injection, extraction, and/or
23
    monitoring wells and the performance of work described in the Remedial Action Workplan for
24
    the shallow zone aquifer and any subsequent document pertaining to the design to implement
25
    the Remedial Action Workplan.  Such access to and use of property will be granted to DTSC
26
    free of charge.  Sunset View Cemetery Association agrees that it will work with DTSC in a
27
    cooperative manner to ensure that DTSC's removal and remedial actions can proceed
28

8.

1   expeditiously with a minimum of procedural delays.  DTSC, its agents, or contractors will

2   coordinate with Sunset View Cemetery Association in order to minimize to the extent feasible

3   disruptions to the use of its property.  Within ten (10) days of the Effective Date, Sunset View

4   Cemetery Association will designate an employee to serve as a liaison with DTSC for

5   coordination of access to property as described in this section.

6          6.2      Chico Unified School District:  Chico Unified School District agrees to

7   allow DTSC, its agents, or contractors reasonable access to and use of property under its control

8   or ownership in Chico, California, for the purposes of performing removal or remedial actions.

9   Specifically, Chico Unified School District agrees that DTSC may access and use its property to

10  implement the Proposed Remedy, including installing and operating for an unlimited time a

11  groundwater extraction well (and associated equipment) and an underground water conveyance

12  pipeline on property owned by Chico Unified School District.  Such access to and use of

13  property will be granted to DTSC free of charge.  Chico Unified School District agrees that it

14  will work with DTSC in a cooperative manner to ensure that DTSC's removal and remedial

15  actions can proceed expeditiously with a minimum of procedural delays.  DTSC, its agents, or

16  contractors will coordinate with Chico Unified School District in order to minimize to the

17  extent feasible disruptions to School District operations.  Within ten (10) days of the Effective

18  Date, Chico Unified School District will designate an employee to serve as a liaison with DTSC

19  for coordination of access to property as described in this section.

20          7.     **REMEDIAL WORK TO BE PERFORMED**

21          7.1     Operation of Chico Unified School District Well 45

22          Chico Unified School District agrees that it will operate its Well 45 at the Chico High

23  School in accordance with its historical use as an irrigation well.  Chico Unified School District

24  will operate this well without charge to DTSC.  Chico Unified School District will notify DTSC

25  prior to making any modifications to Well 45, ceasing operation of Well 45, or

26  decommissioning Well 45.  Within ten (10) days of the Effective Date, Chico Unified School

27  District will designate an employee to serve as a liaison with DTSC for coordination of

28  operation of Well 45.

9.

1          7.2     Remedial Action Workplan for Portions of the Shallow Zone Aquifer

2          In connection with this litigation, environmental consultants retained by Sunset View

3   Cemetery Association have prepared a Remedial Action Workplan ("RAW") concerning PCE

4   contamination in certain portions of the shallow aquifer.  This RAW has been approved and

5   accepted by DTSC.  This Consent Decree does not affirmatively oblige or impose responsibility

6   on Sunset View Cemetery Association or any other of the SEttling Defendants to implement

7   any of the actions or tasks described in the RAW submitted to and accepted by DTSC.

8   Immediately upon entry of this Consent Decree, Sunset View Cemetery Association will

9   instruct its consultants and contractors to provide to DTSC in electronic format historical site

10  data, site figures, groundwater model files, and word processing files containing the text of final

11  reports submitted to DTSC by Sunset View Cemetery Association.

12       8.     **GOVERNMENT LIABILITIES**

13         8.1     Neither DTSC nor any other department or agency of the State of

14  California shall be liable for any injuries or damages to persons or property resulting from acts

15  or omissions by Settling Defendants in carrying out activities pursuant to this Consent Decree.

16  Neither DTSC nor any other department or agency of the State of California shall be held as a

17  party to any contract entered into by Settling Defendants or their agents in carrying out

18  activities pursuant to this Consent Decree unless the contract is entered into in writing by DTSC

19  or such other department or agency of the State of California.

20         8.2     Nothing in this Consent Decree obligates DTSC to perform, implement,

21  or pay for any work specified in the Remedial Action Plan, the Remedial Action Workplan for

22  the shallow zone aquifer, or included in the definition of the Proposed Remedy, or to clean up

23  or remediate contaminated groundwater.  This Consent Decree does not create a cause of action

24  against DTSC for any failure by DTSC to perform, implement, or pay for any work specified in

25  the Remedial Action Plan, the Remedial Action Workplan for the shallow zone aquifer, or

26  included in the definition of the Proposed Remedy, or to clean up or remediate contaminated

27  groundwater.

28

10.

9.      **COVENANT NOT TO SUE BY DTSC**

9.1     Except as specifically provided in sections 9.2 and 10, below, and except as may be necessary to enforce the terms of this Consent Decree, as of the date that DTSC receives all payments required by this Consent Decree, as specified in section 5.1 and 5.2, DTSC covenants not to sue Settling Defendants for "Matters Addressed" by this Consent Decree and not to issue administrative orders to Settling Defendants compelling further investigation, testing, site characterization, remedial analysis, remedial action or monitoring for "Matters Addressed" by this Consent Decree.  "Matters Addressed" includes any and all civil and administrative liability for reimbursement of all or any portion of DTSC's Response Costs, past or future, declaratory relief, injunctive relief or any other relief under CERCLA, the Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code sections 25300 et seq., or common law for liability for Response Costs and/or response actions, with regard to releases or threatened releases of perchloroethylene and its breakdown products at, in, or from the Chico Central Plume, as set forth in the Complaint.

9.2     "Matters Addressed" shall not include, and the covenant not to sue set forth in section 9.1 above does not pertain to, any matters other than those expressly specified in section 9.1.   Nothing in this Consent Decree is intended to expand or diminish any authority DTSC may have regarding the execution and recording of land use covenants that include appropriate limitations on use of land in the area of the Chico Central Plume whose title is held by or is owned by any of the Settling Defendants and where hazardous substances remain on, in, or at the land above levels suitable for unrestricted use.  DTSC reserves, and this Consent Decree is without prejudice to, all rights, claims and causes of action DTSC may have against Settling Defendants with respect to all other matters, including releases or threatened releases of hazardous substances in the city of Chico other than releases or threatened releases of perchloroethylene and its breakdown products at, in, or from the Chico Central Plume.

10.     **RESERVATION OF RIGHTS**

10.1    The Covenant Not to Sue set forth in section 9.1 above does not pertain to the following matters, which DTSC reserves, and this Consent Decree is without prejudice to

11.

all rights and claims of DTSC against each Settling Defendant with respect to the following:

      (a)      failure of any of the Settling Defendants to meet the requirements of this Consent Decree applicable to it;

      (b)      damage to natural resources, as defined in section 101(6) of CERCLA, 42 U.S.C. § 9601(6), including all costs incurred by any natural resources trustees; and

      (c)      criminal liability.

      10.2    Except as expressly provided in this Consent Decree, nothing in this Consent Decree is intended nor shall it be construed to preclude DTSC from exercising its authority under any law, statute or regulation.  Furthermore, nothing in this Consent Decree is intended, nor shall it be construed, to preclude any other state agency, department, board or entity or any federal entity from exercising its authority under any law, statute or regulation.

      10.3    This Consent Decree is not intended, nor shall it be construed, to limit or otherwise affect DTSC's right to select a remedial action for the Chico Central Plume that is different from or inconsistent with the Proposed Remedy or the Remedial Action Workplan for the shallow zone aquifer.

      11.    **COVENANTS NOT TO SUE BY SETTLING DEFENDANTS**

      11.1    Each Settling Defendant covenants not to sue, and agrees not to assert any claims or causes of action against, DTSC, or its contractors or employees, for any costs or damages that Settling Defendant might incur or for any injuries or losses that Settling Defendant might suffer as a result of its performance of the requirements of this Consent Decree.  Each Settling Defendant further covenants not to sue, and agrees not to assert any claims or causes of action against, DTSC, or its contractors or employees, for any and all civil liability for reimbursement of all or any portion of that Settling Defendant's response costs, past or future, declaratory relief, injunctive relief or any other relief under CERCLA, the Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code sections 25300 et seq., or common law for liability for response costs and/or response actions, with regard to releases or threatened releases of perchloroethylene and its breakdown products at, in,

12.

1  or from the Chico Central Plume.

2          11.2    Settling Defendants covenant not to sue, and agree not to assert any

3  claims or causes of action against each other, or their contractors or employees, for any and all

4  civil liability (including but not limited to contractual liability) for reimbursement of all or any

5  portion of Settling Defendants' response costs, past or future, declaratory relief, injunctive relief

6  or any other relief under CERCLA, the Carpenter-Presley-Tanner Hazardous Substance

7  Account Act, California Health & Safety Code sections 25300 et seq., or common law for

8  liability for response costs and/or response actions, with regard to releases or threatened

9  releases of perchloroethylene and its breakdown products that occurred prior to the effective

10  date of this Consent Decree at, in or from the Chico Central Plume.  More specifically, this

11  provision is not intended and shall not be construed to release the Pedens from contractual

12  liabilities the Pedens (as a tenant) may otherwise have to Sunset View under lease terms related

13  to releases of PCE or other hazardous substances by the Pedens on Sunset View's property that

14  may occur subsequent to the effective date of this Consent Decree.

15          11.3    Settling Defendants covenant not to sue, and agree not to assert any

16  claims or causes of action against Noret, Inc., Norville Weiss, and Janet Weiss, or their

17  contractors or employees, for any and all civil liability for reimbursement of all or any portion

18  of Settling Defendants' response costs, past or future, declaratory relief, injunctive relief or any

19  other relief under CERCLA, the Carpenter-Presley-Tanner Hazardous Substance Account Act,

20  California Health & Safety Code sections 25300 et seq., or common law for liability for

21  response costs and/or response actions, with regard to releases or threatened releases of

22  perchloroethylene and its breakdown products at, in, or from the Chico Central Plume.

23      12.    **EFFECT OF CONSENT DECREE**

24          12.1    This Consent Decree constitutes the resolution of Settling Defendants'

25  liability to DTSC with respect to the Matters Addressed in a judicially approved settlement

26  within the meaning of section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2).

27          12.2    Accordingly, provided that Settling Defendants perform all of their

28  obligations under this Consent Decree, as of the date that DTSC receives all payments required

13.

1   by this Consent Decree as specified in section 5.1 and 5.2, Settling Defendants shall be entitled

2   to protection against all claims for contribution, pursuant to section 113(f)(2) of CERCLA, 42

3   U.S.C. § 9613(f)(2), for the Matters Addressed by this Consent Decree (as described in

4   section 9), to the fullest extent permitted by law, including but not limited to those claims

5   reserved by Noret, Inc., Norville Weiss, and Janet Weiss as approved by the Honorable

6   Lawrence K. Karlton on or about October 4, 2006.

7          12.3    Except as specifically provided in this Consent Decree, nothing in this

8   Consent Decree is intended, nor shall be construed, to waive, release, or otherwise affect any

9   right, claim, or cause of action held by any party to this Consent Decree against, or to provide a

10   covenant not to sue to, any third person not a party to this Consent Decree, or to in any way

11   limit, restrict, or impair the right of any party to this Consent Decree to assert rights, claims,

12   causes of actions, and defenses against any third person not a party to this Consent Decree,

13   including without limitation, the right to seek payment, reimbursement, contribution, or

14   indemnity from such persons for obligations incurred or to be incurred, or actions taken or to be

15   taken, under this Consent Decree.  Except as specifically provided in this Consent Decree,

16   DTSC and Settling Defendants expressly reserve any rights, claims, or causes of actions they

17   might have against any third person not a party to this Consent Decree.

18          12.4   This Consent Decree is contingent and dependent on all of its terms being

19   approved and entered by the Court.  If the Court does not approve and enter this Consent

20   Decree, DTSC and Settling Defendants reserve all of their respective rights, remedies, and

21   defenses.

22       13.   **RETENTION OF RECORDS**

23          13.1    Each Settling Defendants shall provide to DTSC, upon request, copies of

24   all documents and information within their possession or control or that of their contractors or

25   agents relating to the implementation of this Consent Decree, including, but not limited to

26   design specifications, reports of construction activities, contracts, invoices, sampling, analysis,

27   chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing,

28   correspondence, easements, permits, grants of access to public property, and city government

14.

1  resolutions.  Such records shall be preserved by each Settling Defendants until 10 years after the

2  entry of this Consent Decree, or 10 years after creation of a record or document, whichever is

3  later.

4     13.2 Settling Defendants may assert that certain documents, records, and other

5  information are privileged under the attorney-client privilege or any other privilege recognized

6  by law.  If Settling Defendants assert such a privilege, it shall provide DTSC with the

7  following: (1) the title of the document, record, or information; (2) the date of the document,

8  record, or information; (3) the name and title of the author of the document, record, or

9  information; (4) the name and title of each addressee and recipient of the document, record, or

10  information; (5) a description of the subject of the document, record, or information; and (6) the

11  privilege asserted by Settling Defendants.  However, no documents, records, or other

12  information created or generated pursuant to the requirements of the Consent Decree shall be

13  withheld on the grounds that they are privileged.  If a claim of privilege applies only to a

14  portion of a document, the document shall be provided to DTSC in redacted form to mask the

15  privileged information only.  Settling Defendants shall retain all records and documents it

16  claims to be privileged until DTSC has had a reasonable opportunity to dispute the privilege

17  claim and any such dispute has been resolved in Settling Defendants' favor.

18    14. **NOTIFICATION**

19     14.1. Notification to or communication between the parties to this Consent

20  Decree as required or provided for in this Consent Decree shall be addressed as follows:

21    As to DTSC:

22     Jim Tjosvold
   Chief, Northern California Central Cleanup Operations Branch
23     Department of Toxic Substances Control
   8800 Cal Center Drive
24     Sacramento, CA 95826-3200
   Attn: Donald Mandel, Project Manager for Chico Central Plume
25     facsimile: (916) 255-3696

26

27

28

15.

1
2
3
4

Judith Tracy, Esq.
Office of Legal Counsel
Department of Toxic Substances Control
1001 "I" Street
P.O. Box 806
Sacramento, CA 95812
facsimile: (916) 323-5542

5
6
7
8

Timothy E. Sullivan, Esq.
Deputy Attorney General
California Department of Justice
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
facsimile: (510) 622-2270

9

As to Sunset View Cemetery Association:

10
11
12
13

J. Brittain Habegger
Paul S. Kibel
Fitzgerald Abbott & Beardsley LLP
1221 Broadway, 21st Floor
Oakland, CA 94612
facsimile: (510) 451-1527

14
15

Michael Klinger, President
Sunset View Cemetery Association
P.O. Box 187
El Cerrito, CA 94530
facsimile: (510) 527-5484

16
17

As to the Pedens:

18
19
20

Joseph A. Salazar, Jr.
Lewis Brisbois Bisgaard & Smith LLP
2500 Venture Oaks Way, Suite 200
Sacramento, CA  95833
facsimile: (916) 564-5444

21

As to Metcalf & Eddy, Inc.

22
23
24
25

Kenneth F. Strong, Esq.
William J. Peters, Esq.
Aristotle E. Evia, Esq.
Gordon & Rees LLP
Embarcadero Center West Tower
275 Battery Street
San Francisco, CA 94111
facsimile: (415) 262-3766

26
27
28

16.

1                 Michael R. Kolloway, Esq.
                 Vice President and General Counsel
2                 Consoer Townsend Engineering
                 303 East Wacker Drive, Suite 600
3                 Chicago, IL 60601-5276
                 facsimile: (312) 938-1109

4

        As to Chico Unified School District

5

6                 Ms. Kelly Staley
                 Interim Superintendent
                 Chico Unified School District
7                 Administrative Office
                 1163 East Seventh Street
8                 Chico, CA 95928-5999

9         14.2.    Upon 10 days notice to the other party, a party to this Consent Decree

10 may substitute another person for an addressee named above to receive notifications or

11 communications as required or provided for in this Consent Decree.

12       15.     **MODIFICATION OF CONSENT DECREE**

13         This Consent Decree may only be modified upon the written agreement of DTSC

14 and Settling Defendants and the approval of the Court, or upon order of the Court after noticed

15 motion by a party to this Consent Decree.

16       16.     **APPLICATION OF CONSENT DECREE**

17         This Consent Decree shall apply to and be binding upon DTSC, Settling

18 Defendants, and each of their respective successors and assigns.  The provisions of this Consent

19 Decree shall inure to the benefit of DTSC, Settling Defendants, and each of their respective

20 successors and assigns.  The provisions of this Consent Decree shall also inure to the benefit of

21 the officers, directors, employees and agents of Settling Defendants, in their capacities as such.

22       17.     **AUTHORITY TO ENTER**

23         Each signatory to this Consent Decree certifies that he or she is fully authorized

24 by the party he or she represents to enter into this Consent Decree, to execute it on behalf of the

25 party represented, and legally to bind that party.

26       18.     **INTEGRATION**

27         This Consent Decree, including the exhibits and other materials incorporated

28 herein by reference, constitutes the entire agreement between DTSC and Settling Defendants

17.

1  and may not be amended or supplemented except as provided for in this Consent Decree.

2  19.  **RETENTION OF JURISDICTION**

3      The Court shall retain jurisdiction of this matter for the purpose of enforcing the

4  terms of this Consent Decree.

5  20.  **EXECUTION OF DECREE**

6      This Consent Decree may be executed in two or more counterparts, each of

7  which shall be deemed an original, but all of which together shall constitute one and the same

8  instrument.

9  21.  **INTERPRETATION**

10     California law governs the interpretation of this Consent Decree.  This Consent

11  Decree shall be deemed to have been drafted equally by all parties hereto.

12  22.  **ATTORNEYS FEES AND COSTS**

13     As to each other, each party to this Consent Decree shall bear its own costs,

14  attorneys' fees, expert witness fees and all other costs of litigation.  This paragraph shall have no

15  effect on the parties' right to recover these fees or costs from any other party.

16  23.  **APPROVALS OF PARTIES**

17     Plaintiff DTSC consents to this Consent Decree by its authorized representative
    as follows:

18
                                        CALIFORNIA DEPARTMENT OF
19                                      TOXIC SUBSTANCES CONTROL

20
    Dated: 11/8/07                      /s/ James Tjosvold
21                                      James Tjosvold
                                        Chief, Northern California-Central Cleanup
22                                        Operations Branch
                                        California Department of Toxic Substances
23                                      Control

24

25

26

27

28

18.

1

2    Sunset View Cemetery Association consents to this Consent Decree by its
     authorized representative as follows:

3
                                                    SUNSET VIEW CEMETERY
4                                                   ASSOCIATION

5
        Dated: 11/15/07                             /s/ Michael J. Klinger
6                                                   Michael Klinger, President of Sunset
                                                    View Cemetery Association
7

8           John Peden consents to this Consent Decree:

9

10      Dated: 11/2/07                              /s/ John Peden
                                                    John Peden
11

12          Lorena Peden consents to this Consent Decree:

13

14      Dated: 11/2/07                              /s/ Lorena Peden
                                                    Lorena Peden
15

16          Peden Enterprises, Inc. consents to this Consent Decree by its authorized
     representative as follows:
17
                                                    PEDEN ENTERPRISES, INC.
18

19      Dated: 11/2/07                              /s/  John Peden
                                                    by:  Vice President
20

21          Metcalf & Eddy, Inc. consents to this Consent Decree by its authorized
     representative as follows:
22
                                                    METCALF & EDDY, INC.
23

24      Dated: 11/1/07                              /s/ Michael R. Kolloway
                                                    by: Michael R. Kolloway
25                                                     Sr. Vice President

26

27

28

                                          19.

1            Chico Unified School District consents to this Consent Decree by its authorized
2    representative as follows:

3                                  CHICO UNIFIED SCHOOL DISTRICT

4         Dated: 11/20/07                /s/ Michael Weissenborn
5                                    by: Michael Weissenborn
                                       Facilities Planner

6

7    APPROVED AS TO FORM:

8    Dated: 11/6/07

9                                  EDMUND G. BROWN JR.
                                   Attorney General of the State of California
                                   JANET GAARD
10                                   Acting Chief Assistant Attorney General
                                   THEODORA BERGER
11                                 Senior Assistant Attorney General
                                   SALLY KNOX
12                                 Supervising Deputy Attorney General

13

14                          By /s/ Timothy E. Sullivan
                                   TIMOTHY E. SULLIVAN
                                   Deputy Attorney General
15                                 Attorneys for Plaintiff California
16                                 Department of Toxic Substances Control

     Dated: 11/15/07
17                        By: /s/ J. Brittain Habegger
                                   J. BRITTAIN HABEGGER
18                                 PAUL S. KIBEL
                                   Fitzgerald, Abbott & Beardsley LLP
19                                 Attorneys for Sunset View Cemetery
                                   Association
20

21   Dated: 11/6/07
22                        By: /s/ Joseph A. Salazar, Jr.
                                   JOSEPH A. SALAZAR, JR.
23                                 Lewis Brisbois Bisgaard & Smith LLP
                                   Attorneys for John Peden, Lorena Peden,
24                                 and Peden Enterprises

25   Dated: 11/1/07
26                        By: /s/ Aristotle Evia
                                   WILLIAM J. PETERS
                                   KENNETH F. STRONG
27                                 ARISTOTLE EVIA
                                   Gordon & Rees LLP
28                                 Attorneys for Metcalf & Eddy, Inc.

1

2  Dated: 11/30/07

3                       By: /s/ Richard L. Crabtree
                             RICHARD L. CRABTREE

4                             Law Offices of Richard L. Crabtree
                             Attorneys for Chico Unified School District

5

6  **IT IS SO ORDERED, ADJUDGED AND DECREED:**

7

8  Dated: January 7, 2008.

9

10

11                       LAWRENCE K. KARLTON
                       SENIOR JUDGE

12                       UNITED STATES DISTRICT COURT

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21.